No. 2018-1763

# United States Court of Appeals for the Federal Circuit

**AMERICAN AXLE & MANUFACTURING, INC.,**

*Plaintiff-Appellant,*

v.

**NEAPCO HOLDINGS LLC AND NEAPCO DRIVELINES LLC,**

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Delaware in C.A. No. 15-cv-1168, United States District Court Judge Leonard P. Stark

## BRIEF OF AMICUS CURIAE JEREMY C. DOERRE IN SUPPORT OF REHEARING

December 11, 2019

Jeremy C. Doerre
Tillman Wright, PLLC
11325 N. Community House Rd., Suite 250
Charlotte, NC 28277
Phone: 704-248-4883
Email: jdoerre@ti-law.com

*Attorney for Amicus Curiae*

# CERTIFICATE OF INTEREST

Counsel for Amicus Curiae Jeremy C. Doerre certifies the following:

1. The full name of every party or amicus represented by me is:

   Jeremy C. Doerre

2. The name of any real party in interest represented by me (other than identified in question 3) is:

   Jeremy C. Doerre

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   none

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   none

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal is (*See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b)):

   none (although Amicus is counsel for appeal no. 2019-1062 addressing related legal issues)

Dated: December 11, 2019

/s/ Jeremy C. Doerre

Jeremy C. Doerre
Tillman Wright, PLLC
11325 N. Community House Rd.
Suite 250
Charlotte, NC 28277
Phone: 704-248-4883
Email: jdoerre@ti-law.com

*Attorney for Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ........................................................................ v

RULE 29 STATEMENT ........................................................................ 1

ARGUMENT ........................................................................ 2

I. Even if this Court is not so bound, this Court's guidance would be advantageous as to whether a patent challenger can establish, and a district court can find, claims to be ineligible under the implicit judicial exception to 35 U.S.C. § 101 while "avoid[ing] … identifying what the underlying [ineligible concept] is." ........................................ 5

A. An "approach to section 101" that "avoids determining whether the asserted claims are directed to an [ineligible concept], or even identifying what the underlying [ineligible concept] is … is contrary to the Supreme Court's direction in Alice." ...................... 5

B. A patent challenger cannot, under the implicit judicial exception to 35 U.S.C. § 101, "prove that the patent does not satisfy the[] prerequisites [of § 101 so that] the patent loses its presumption of validity" without "identifying what the underlying [ineligible concept] is." ........................................ 6

C. A district court cannot, under the implicit judicial exception to 35 U.S.C. § 101, "provide sufficient detail to elucidate the reasoning by which the court reached its ultimate … conclusion on [this] issue of law" without "identifying what the underlying [ineligible concept] is." ........................................ 8

II. The Court's difficulty in articulating what natural laws the claims are directed to highlights that the implicit judicial exception to 35 U.S.C. § 101 for natural laws is ill-suited to police overbroad "[c]laims directed merely to a 'desired result'" because it requires patent challengers and district court judges to have to identify what natural laws are utilized in

claims that by their very nature do not specify how the result is achieved. ..........9

III. This Court's precedent evidences that the written description requirement of 35 U.S.C. § 112 is well suited to police overbroad "[c]laims directed merely to a 'desired result' … [which] cover any means which anyone may ever discover of producing the result." ..........10

CONCLUSION ..........12

CERTIFICATE OF SERVICE .......... I

CERTIFICATE OF COMPLIANCE ..........II

## TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014)............................................................4-6, 8, 10, *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ............................................................ 4-6, 8, 10

*Cable Elec. Prods. Inc. v. Genmark, Inc.,*
770 F.2d 1015 (Fed. Cir.1985) ....................................................................7

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
appeal no. 2018-1817 (Fed. Cir. Jun. 25, 2019) ........................................ 6-7, 10

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .................................................................. 5-6

*Gechter v. Davidson*,
116 F.3d 1454 (Fed. Cir. 1997) ..............................................................8, 10

*In re Fuetterer*,
319 F.2d 259 (C.C.P.A. 1963) .............................................................2, 5, 9, 12

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) .................................................................. 2-3

*Lear Siegler, Inc. v. Aeroquip Corp.,*
733 F.2d 881 (Fed. Cir. 1984) .....................................................................7

*Lizardtech, Inc. v. Earth Resource Mapping*,
424 F.3d 1336 (Fed. Cir. 2005). ..............................................................2, 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
566 U.S. 66 (2012)....................................................................... 9, *passim*

*O'Reilly v. Morse*,
56 U.S. 62 (1853) .......... 2, 5, 9-11, *passim*

*SAP Am., Inc. v. InvestPic, LLC*,
890 F.3d 1016 (Fed. Cir. 2018) .......... 3

**Statutes**

35 U.S.C. § 101 .......... *passim*

35 U.S.C. § 112 .......... *passim*

35 U.S.C. § 282 .......... 7

## RULE 29 STATEMENT

Amicus is a patent attorney whose only interest is in obtaining this Court's guidance regarding eligibility law. Amicus has no interest or stake in any party or in the outcome of this case, and no current client with a direct interest in the outcome of this case (although Amicus is counsel for no. 2019-1062 addressing related legal issues).

No party or counsel for a party: authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief. No person other than Amicus contributed money that was intended to fund preparing or submitting this brief.

By email, counsel for Plaintiff-Appellant indicated that Plaintiff-Appellant will not oppose a motion for leave to file an amicus brief in support of rehearing. By email, counsel for Defendants-Appellees indicated that they have no position on whether they object to the motion and will reserve taking a position until seeing the motion.

## ARGUMENT

The Opinion for the Court[1] expresses a concern that the "'claim[s] [] encompass[] all solutions for achieving [the] desired result'"[2] of "damping two different types of vibrations."[3] In this regard, "[c]laims directed merely to a 'desired result' have long been considered objectionable primarily because they cover any means which anyone may ever discover of producing the result."[4] The Supreme Court indicated in *Morse* that such a "claim is too broad, and not warranted by law"[5] because the inventor "claims an exclusive right to use a manner and process which he has not described and indeed had not invented, and therefore could not describe when he obtained his patent."[6]

Although this Court has addressed such a situation where "there is no support for such a broad claim in the specification"[7] under 35 U.S.C. § 112 (and cited to *Morse* for support), this Court has also continued to address such overbreadth concerns under 35 U.S.C. § 101, and this Court's "recent abstract idea

---

[1] Dkt. No. 61 at 1 (hereinafter the "Opinion").
[2] Opinion at 16 (quoting *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018)).
[3] Opinion at 20.
[4] *In re Fuetterer*, 319 F.2d 259, 263 (C.C.P.A. 1963) (citing *O'Reilly v. Morse*, 56 U.S. 62 (1853)).
[5] *Morse*, 56 U.S. at 113.
[6] *Id.*
[7] *Lizardtech, Inc. v. Earth Resource Mapping*, 424 F.3d 1336, 1344 (Fed. Cir. 2005).

exception decisions [] have stressed that a claimed invention must embody a concrete solution to a problem having 'the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it.'"[8]

The Court's concern that the "claim[s] [] encompass[] all solutions for achieving [the] desired result"[9] of "damping two different types of vibrations"[10] could suggest that the Court is concerned that the claims "'risk disproportionately tying up the use of the underlying' idea[]" of "damping two different types of vibrations."[11]

Notably, though, the Court indicates that "the patent here is directed to a natural law rather than an abstract idea."[12] In particular, the Court indicates that "the claims of the '911 patent are directed to the utilization of a natural law (here, Hooke's law and possibly other natural laws) in a particular context."[13]

One member of this Court writing in dissent,[14] however, suggests that "[e]ven the majority does not agree with the district court that the claims are directed to Hooke's Law."[15] The Dissent expresses a concern that "[t]he majority

---

[8] *Interval Licensing*, 896 F.3d at 1343 (quoting *SAP Am., Inc. v. InvestPic, LLC*, 890 F.3d 1016, 1021–22 (Fed. Cir. 2018) (collecting cases)).
[9] Opinion at 16 (quoting *Interval Licensing*, 896 F.3d at 1343).
[10] Opinion at 20.
[11] Opinion at 20.
[12] Opinion at 17.
[13] Opinion at 19.
[14] Dkt. No. 61 at 24 (hereinafter the "Dissent").
[15] Dissent at 2.

holds that the[] [claims] are directed to some unarticulated number of possible natural laws apparently smushed together and thus ineligible under § 101,"[16] and urges that "Section 101 is monstrous enough, it cannot be that now you need not even identify the precise natural law which the claims are purportedly directed to."[17]

Notably, this is not the first time that a member of this Court writing in dissent has expressed concern that "[t]he majority avoids … even identifying what the underlying abstract idea is."[18]

Amicus urges that even if there is no requirement for this Court to specifically identify the natural law or abstract idea that a claim is directed to, this Court's guidance would be advantageous as to whether a patent challenger can establish, and a district court can find, claims to be ineligible under the implicit judicial exception to 35 U.S.C. § 101 while "avoid[ing] … identifying what the underlying [ineligible concept] is."[19]

In this regard, the difficulty of the patent challenger and the Court in articulating what natural laws the claims are directed to highlights that the implicit

---

[16] Dissent at 14.
[17] Dissent at 2.
[18] *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1307 (Fed. Cir. 2016) (Reyna, J., dissenting) (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014)).
[19] *Id.*

judicial exception to 35 U.S.C. § 101 for natural laws is ill-suited to police overbroad "[c]laims directed merely to a 'desired result'"[20] because it requires patent challengers and district court judges to have to identify what natural laws are utilized in claims that by their very nature do not specify how the result is achieved.

## I. Even if this Court is not so bound, this Court's guidance would be advantageous as to whether a patent challenger can establish, and a district court can find, claims to be ineligible under the implicit judicial exception to 35 U.S.C. § 101 while "avoid[ing] … identifying what the underlying [ineligible concept] is."[21]

### A. An "approach to section 101" that "avoids determining whether the asserted claims are directed to an [ineligible concept], or even identifying what the underlying [ineligible concept] is … is contrary to the Supreme Court's direction in *Alice*."[22]

"In setting up the two-stage *Mayo*/*Alice* inquiry, the Supreme Court has declared: 'We must first determine whether the claims at issue are directed to a patent-ineligible concept.'"[23] This Court has indicated that this "formulation plainly contemplates that the first step of the inquiry is a meaningful one, i.e., that a substantial class of claims are not directed to a patent-ineligible concept," and

---

[20] *Fuetterer*, 319 F.2d at 263 (citing *Morse*, 56 U.S. 62).
[21] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).
[22] *Id.*
[23] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2355).

that "[t]he 'directed to' inquiry, therefore, cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world."[24]

It has been suggested that an "approach to section 101" that "avoids determining whether the asserted claims are directed to an [ineligible concept], or even identifying what the underlying [ineligible concept] is … is contrary to the Supreme Court's direction in *Alice*."[25]

Seemingly, in order for analysis at this first step to be meaningful, it at a minimum cannot "avoid[] … identifying what the underlying [ineligible concept] is[,] … [as] that approach to section 101 is contrary to the Supreme Court's direction in *Alice*."[26]

### B. A patent challenger cannot, under the implicit judicial exception to 35 U.S.C. § 101, "prove that the patent does not satisfy the[] prerequisites [of § 101 so that] the patent loses its presumption of validity"[27] without "identifying what the underlying [ineligible concept] is."[28]

---

[24] *Enfish*, 822 F.3d at 1335.
[25] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).
[26] *Id.*
[27] *Cellspin Soft, Inc. v. Fitbit, Inc.*, appeal no. 2018-1817, slip op. at 23 (Fed. Cir. Jun. 25, 2019).
[28] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).

Recently, this Court confirmed that the presumption of validity of 35 U.S.C. § 282 applies to questions of patent eligibility under 35 U.S.C. § 101 such that claims in an issued patent are "presumed *patent eligible*."[29]

Given that the presumption of validity applies, a patent challenger presenting an eligibility challenge must "prove that the patent does not satisfy the[] prerequisites [of 35 U.S.C. § 101] before the patent loses its presumption of validity,"[30] and as the "party asserting invalidity [has] the initial burden of going forward to establish a prima facie case on that issue"[31] and the ultimate "'burden of persuasion on the issue[,] … [which burden] rests throughout the litigation with the party asserting invalidity.'"[32]

In order to "prove that the patent does not satisfy the[] prerequisites [of 35 U.S.C. § 101] [so that] the patent loses its presumption of validity,"[33] a patent challenger must establish that "the claims at issue are directed to a patent-ineligible

---

[29] *Cellspin Soft, Inc. v. Fitbit, Inc.*, appeal no. 2018-1817, slip op. at 23 (Fed. Cir. Jun. 25, 2019) ("To the extent the district court departed from this principle by concluding that issued patents are presumed *valid* but not presumed *patent eligible*, it was wrong to do so." (emphasis in original)).
[30] *Id.*
[31] *Cable Elec. Prods. Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1022 (Fed. Cir.1985) (quoting *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984)).
[32] *Cable Elec.*, 770 F.2d at 1022 (quoting *Lear Siegler*, 733 F.2d 881 at 885).
[33] *Cellspin*, appeal no. 2018-1817, slip op. at 23.

concept,"[34] which as discussed above, would seem to require at the very least "identifying what the underlying [ineligible concept] is."[35]

### C. A district court cannot, under the implicit judicial exception to 35 U.S.C. § 101, "provide sufficient detail to elucidate the reasoning by which the court reached its ultimate … conclusion on [this] issue of law"[36] without "identifying what the underlying [ineligible concept] is."[37]

This Court has made clear that "[a] district court … must provide sufficient detail to elucidate the reasoning by which the court reached its ultimate … conclusion on [this] issue of law; otherwise, the appellate court is unable to carry out its appellate review function."[38] In this regard, at the very least the district court cannot "avoid[] … identifying what the underlying [ineligible concept] is[,] … [as] that approach to section 101 is contrary to the Supreme Court's direction in *Alice*."[39]

---

[34] *Alice*, 134 S. Ct. at 2355.
[35] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).
[36] *Gechter v. Davidson*, 116 F.3d 1454, 1458 (Fed. Cir. 1997).
[37] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).
[38] *Gechter*, 116 F.3d at 1458.
[39] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).

## II. The Court's difficulty in articulating what natural laws the claims are directed to highlights that the implicit judicial exception to 35 U.S.C. § 101 for natural laws is ill-suited to police overbroad "[c]laims directed merely to a 'desired result'"[40] because it requires patent challengers and district court judges to have to identify what natural laws are utilized in claims that by their very nature do not specify how the result is achieved.

As noted above, the Court indicates that "the claims of the '911 patent are directed to the utilization of a natural law (here, Hooke's law and possibly other natural laws) in a particular context."[41]

The Court's difficulty in articulating what natural laws the claims are directed to highlights the problem that it is often very difficult, and sometimes impossible, to articulate what natural laws are implicated or utilized for achieving a desired result if the means or process for achieving the result is not specified.

Thus, while the implicit judicial exception to 35 U.S.C. § 101 for natural laws is well-suited to address the situation which involves "simply stat[ing] a law of nature while adding the words 'apply it,'"[42] it is ill-suited to address the situation of "[c]laims directed merely to a 'desired result'"[43] because it can be very difficult to identify what natural laws are implicated or utilized for achieving the desired result. In some situations where "'claim[s] [] encompass[] all solutions for

---

[40] *Fuetterer*, 319 F.2d at 263 (citing *Morse*, 56 U.S. 62).
[41] Opinion at 19.
[42] *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012).
[43] *Fuetterer*, 319 F.2d at 263 (citing *Morse*, 56 U.S. 62).

achieving a desired result',"[44] it may even be that the result could be achieved using different solutions involving application of various different natural laws.

While this may not be a problem for this Court if there is no requirement that this Court identify a specific natural law that a claim is directed to, this is a problem for patent challengers, who cannot "prove that the patent does not satisfy the[] prerequisites [of § 101 so that] the patent loses its presumption of validity"[45] without "identifying what the underlying [ineligible concept] is,"[46] and for district court judges, who cannot "provide sufficient detail to elucidate the reasoning by which the court reached its ultimate … conclusion on [this] issue of law"[47] without "identifying what the underlying [ineligible concept] is."[48]

## III. This Court's precedent evidences that the written description requirement of 35 U.S.C. § 112 is well suited to police overbroad "[c]laims directed merely to a 'desired result' … [which] cover any means which anyone may ever discover of producing the result."[49]

---

[44] Opinion at 16 (quoting *Interval Licensing*, 896 F.3d at 1343).
[45] *Cellspin*, appeal no. 2018-1817, slip op. at 23.
[46] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).
[47] *Gechter*, 116 F.3d at 1458.
[48] *Amdocs*, 841 F.3d at 1307 (Reyna, J., dissenting) (citing *Alice*, 134 S. Ct. at 2355).
[49] *Fuetterer*, 319 F.2d at 263 (citing *Morse*, 56 U.S. 62).

As noted above, the Supreme Court found in *Morse* that a "claim is too broad, and not warranted by law"[50] because the inventor "claims an exclusive right to use a manner and process which he has not described and indeed had not invented, and therefore could not describe when he obtained his patent."[51]

Although *Morse* is a foundational case in eligibility jurisprudence, this Court has also cited to *Morse* in finding that 35 U.S.C. § 112 can be utilized to address such situations where "there is no support for such a broad claim in the specification."[52]

Specifically, in *Lizardtech, Inc. v. Earth Resource Mapping*, this Court noted that "[t]he trouble with allowing [the] claim [] to cover all ways of performing DWT-based compression processes that lead to a seamless DWT is that there is no support for such a broad claim in the specification."[53] The Court "h[e]ld that the description of one method for creating a seamless DWT does not entitle the inventor of the [] patent to claim any and all means for achieving that objective."[54]

---

[50] *Morse*, 56 U.S. at 113.
[51] *Morse*, 56 U.S. at 113; see also *Morse*, 56 U.S. at 120 ("[t]he words of the acts of Congress … show that no patent can lawfully issue upon such a claim … [f]or he claims what he has not described in the manner required by law.")
[52] *Lizardtech, Inc. v. Earth Resource Mapping*, 424 F.3d 1336, 1344 (Fed. Cir. 2005).
[53] *Id.* at 1344.
[54] *Id.* at 1346.

Thus, this Court has readily applied the written description requirement of 35 U.S.C. § 112 to police overbroad "[c]laims directed merely to a 'desired result' … [which] cover any means which anyone may ever discover of producing the result."[55]

**CONCLUSION**

Amicus urges that rehearing would be advantageous for the reasons set forth herein.

Dated: December 11, 2019

Respectfully submitted,

/s/ Jeremy C. Doerre

Jeremy C. Doerre
Tillman Wright, PLLC
11325 N. Community House Rd.
Suite 250
Charlotte, NC 28277
Phone: 704-248-4883
Email: jdoerre@ti-law.com

*Attorney for Amicus Curiae*

---

[55] *Fuetterer*, 319 F.2d at 263 (citing *Morse*, 56 U.S. 62).

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document using the Court's CM/ECF Filing System on December 11, 2019. All counsel of record were served via CM/ECF on December 11, 2019.

Paper copies will be filed with the Court within the time provided in the Court's rules. Paper copies will also be mailed to counsel for each party in the case at the time paper copies are mailed to the Court.

Dated: December 11, 2019

/s/ Jeremy C. Doerre

Jeremy C. Doerre
Tillman Wright, PLLC
11325 N. Community House Rd.
Suite 250
Charlotte, NC 28277
Phone: 704-248-4883
Email: jdoerre@ti-law.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(4).

   The brief contains 2599 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   The brief has been prepared in a proportionally spaced typeface using Microsoft Word from Microsoft Office 365 in Times New Roman Size 14.

Dated: December 11, 2019

/s/ Jeremy C. Doerre

Jeremy C. Doerre
Tillman Wright, PLLC
11325 N. Community House Rd.
Suite 250
Charlotte, NC 28277
Phone: 704-248-4883
Email: jdoerre@ti-law.com