**2018-1763**

# United States Court of Appeals
# For the Federal Circuit

AMERICAN AXLE & MANUFACTURING, INC.,

Plaintiff-Appellant,

– v. –

NEAPCO HOLDINGS LLC, NEAPCO DRIVELINES LLC,

Defendants-Appellees.

*Appeal from the United States District Court for the District of Delaware in Case No. 1:15-cv-01168-LPS, Judge Leonard P. Stark*

**BRIEF OF AMICUS CURIAE PAUL R. MICHEL, U.S. CIRCUIT JUDGE (RET.) IN SUPPORT OF REHEARING EN BANC**

JOHN T. BATTAGLIA
4608 Brookside Drive
Alexandria, Virginia 22312
Tel. # 703-658-2101
JT6Battaglia@Hotmail.com
*Counsel for Amicus Curiae*

December 12, 2019

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

American Axle & Mfg., Inc. v. Neapco Holdings LLC

Case No. 18-1763

## CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ■ (amicus) ☐ (name of party)

John T. Battaglia, Esq.

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Paul R. Michel, U.S. Circuit Judge | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

NONE

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary).

NONE

Dec. 12, 2019

Date

/s/ John T. Battaglia

Signature of counsel

John T. Battaglia

Printed name of counsel

Please Note: All questions must be answered

cc: Paul R. Michel, U.S. Circuit Judge

Reset Fields

## Table of Contents

**CERTIFICATE OF INTEREST** ........ i

**RULE 29 STATEMENT** ........ 1

**ARGUMENT** ........ 1

**A. The Opinion Contravenes Core Summary-Judgment Rules and Ignores Evidence of a Genuine Dispute.** ........ 1

**B. The '911 Claims Recite a *Multi*-Part, *Multi*-Step Process for Manufacturing Auto-Parts—and are *Not* Directed to Ineligible Matter.** 5

**1. Under *Bilski*, the '911 Claims Recite a Process "Grounded" in *Multiple Physical* Parts, Showing the Claims are *Not* Directed to Ineligible Matter.** ........ 5

**2. The '911 Claims Also Recite a Multi-Step Manufacturing Process—i.e., "*Industrial*" Matter the Court has "*Historically*" Deemed §101-Eligible.** 6

**3. As in *Diehr*, the '911 Claims Recite *One* Step with "Tuning At Least One Liner"—*in Conjunction with Several Other Steps and Components*.** 7

**C. The '911 Claims do *Not* Preempt Hooke's Law, Confirming They are Patent-Eligible.** ........ 9

**D. The Majority's §101 Rulings Warrant En-Banc Treatment.** ........ 10

**CONCLUSION** ........ 11

**CERTIFICATE OF COMPLIANCE** ........ 12

**ALL EMPHASIS ADDED UNLESS OTHERWISE NOTED** ........ 12

**CERTIFICATE OF SERVICE** ........ 13

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................2, 3

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*,
927 F.3d 1333 (Fed. Cir. 2019) ..................4, 8

*Berkheimer v. H-P, Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ..................2, 3, 5

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ..................2, 3, 5, 12

*Diamond v. Diehr*,
450 U.S. 175 (1981) ..................passim

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2015) ..................8

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ..................10

*Hotel 71 Mezz Lender v. Nat'l Retirement Fund*,
778 F.3d 593 (7th Cir. 2015) ..................2

*In re Bilski*,
130 S.Ct. 3218 (2010)..................6, 7, 8, 13

*In re Bressman*,
327 F.3d 229 (3d Cir. 2003) ..................2

*Mayo Collaborative Servs v. Prometheus Labs, Inc.*,
132 S.Ct. 1289 (2012)..................8, 10, 13

*nCube Corp. v. Seachange Intern., Inc.*,
436 F.3d 1317 (Fed. Cir. 2006) ..................3

*Parker v. Flook*,
437 U.S. 584 (1978) ..................10

*U.S. Philips Corp. v. Windmere Corp.*,
861 F.2d 695 (Fed. Cir. 1988) ..................3

*U.S. v. Donovan*,
661 F.3d 174 (3d Cir. 2011) ..................3

**Constitutional Provisions**

U.S. Const. Art. I, § 8, cl. 8 .......... 7

**Statutes**

35 U.S.C. §101 .......... passim
Fed. Prac. & Proc. Civ §2535 .......... 3

**Judicial Rules**

Fed. R. App. P. 35(a) .......... 11
Fed. R. Civ. P. 56 .......... 3, 4
Sup. Ct. R. 29 .......... 1

## RULE 29 STATEMENT[1]

Amicus Curiae is a former U.S. Circuit Judge of the U.S. Court of Appeals for the Federal Circuit, appointed in 1988 and serving until his retirement as Chief Judge in 2010. During that time, Judge Paul Michel helped decide more than 1000 appeals involving patent rights. He has since been frequently called on to speak and provide guidance on those laws, including by the U.S. Senate's IP Subcommittee on 35 U.S.C. §101. This case concerns Amicus because the §101 rulings-at-issue threaten to undercut patent law and its innovation-promoting goals.

## ARGUMENT

The panel's decision is legally incorrect and ill-advised. For the three reasons explained below, the court should rehear this appeal en banc.

### A. The Opinion Contravenes Core Summary-Judgment Rules and Ignores Evidence of a Genuine Dispute.

***First***, without even reaching the patent particulars, the opinion fundamentally misapplied summary-judgment law in concluding that one of the '911 patent's claimed steps—"*tuning at least one liner*"—is merely an unspecified application of Hooke's law that renders the claims ineligible. Op. at 11. When a party bearing the burden of proof moves for summary judgment—such as Neapco moving for

[1] This brief was not authored in whole or in part by any party's counsel; no person or entity other than amicus financially contributed to its preparation or submission; and amicus has no stake in the parties or case outcome. Appellee Neapco has withheld its consent to this filing. A motion for leave is being filed herewith.

judgment on ineligibility—the standard is ***not*** the usual *Celotex/Anderson* standard applicable when non-movants bear the burden.[2] The standard, instead, is that the evidence is "***so one-sided***" and "***so strongly and overwhelming[ly]*** in [movant's] favor" that a reasonable fact-finder "could ***not*** arrive at any contrary conclusion"—i.e., could only find for movant. *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).[3] In assessing the summary-judgment record, moreover, a court in this context must credit the non-movant's evidence—AAM's—and reject the movant's—Neapco's—that it need not believe.[4] And it must grant all justifiable inferences in the non-movant's favor. *Anderson*, 477 U.S. at 255. Thus, "granting judgment as a matter of law for the party carrying the burden of proof is generally '***reserved for extreme cases ….***'"[5]

---

[2] *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Berkheimer v. H-P, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (*Mayo/Alice* ineligibility test often involves fact questions that preclude summary judgment).

[3] *Hotel 71 Mezz Lender v. Nat'l Retirement Fund*, 778 F.3d 593, 601-02 (7th Cir. 2015) (movant with burden must "demonstrate why the record is ***so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim***"); *In re Bressman*, 327 F.3d 229, 237-38 (3d Cir. 2003) (movant must establish facts ***"beyond peradventure"*** and show "no reasonable jury could find for" non-movant).

[4] *Core Wireless*, 880 F.3d at 1364-65; *U.S. v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011); *nCube Corp. v. Seachange Intern., Inc.*, 436 F.3d 1317, 1323 (Fed. Cir. 2006) (factfinder "not required to accept" JMOL movant's cited testimony, "even if uncontradicted," when movant has burden of proof); *U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 703-04 (Fed. Cir. 1988) (same).

[5] *Core Wireless,* 880 F.3d at 1364; 9B Fed. Prac. & Proc., Civ §2535 (3d ed)).

This is no extreme case, at least not insofar as it warrants summary judgment of ineligibility—the defense for which Neapco must prove by clear-and-convincing evidence. *Berkheimer*, 881 F.3d at 1368. And it is irrelevant to say that courts have frequently found claims ineligible on summary judgment. After all, even putting aside the propriety of doing so—of using general outcomes to decide a specific case—those decisions that have summarily adjudicated ineligibility usually involved (1) implementing business methods and abstract concepts via conventional computer technology, or (2) "diagnostic-testing."[6] Thus, the subject matter in those cases differed materially from the mechanical/industrial-process claims-at-issue here.

Properly applied, moreover, these Rule 56 requirements bar summary judgment of ineligibility. To begin, the opinion plainly didn't apply these requirements, as it doesn't even mention them. Op. at 8 (reciting general summary-judgment standard only). Further, to show that the '911 claims focus on an ineligible natural law (Hooke's law), the decision first relies on testimony by Neapco's own expert, *id.* at 10—evidence that typically ***doesn't count*** on a summary judgment brought by a burden-carrying movant, since factfinders may reject such burden-of-proof testimony "even if uncontradicted." *See* cases, n.4.

---

[6] *See, e.g., Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*, 927 F.3d 1333, 1337-38 & n.1 (Fed. Cir. 2019) (Dyk., J., concurring in denial of rhr'g petition) (collecting cases); *id.* at 1352-53 (Moore, J., dissenting from denial of rhr'g petition) (collecting "diagnostic" cases).

Thereafter the majority briefly quotes testimony by two fact witnesses—a '911 inventor and an AAM engineer—both of whom answer about how changing the "mass" or "stiffness" for the claimed "liner" can "control[]" its "tuning." Op. at 10-11. This supposedly demonstrates the claimed "tuning" step is really Hooke's law. *Id.* But this fact testimony is hardly "so one-sided" and "overwhelming" that a factfinder could only find for Neapco—and so find by clear-and-convincing evidence. *See Core Wireless; Berkheimer, supra*. Indeed, the opinion offers no context for this vague-and-incomplete testimony, and it fails to account for the fact that the witnesses are addressing but one aspect ("tuning at least one liner") of a method-of-manufacturing claim that recites ***multiple*** steps***—and multiple physical*** parts. Op. at 10-11. And even then, the most the majority can say about this testimony is that it shows this lone step "***implicates***" Hooke's law. *Id.*

Moreover, the majority admits that AAM's expert, Dr. Rahn, provided testimony that this "tuning" step involves far more than Hooke's law. *Id.* at 11. Thus, even while having no burden, AAM's expert explained that the '911 claims-at-issue are ***not*** "directed to" Hooke's law. *Id.* The majority hedges on whether it accepts this AAM evidence, Op. at 20—something it ***must*** do on summary judgment (with exceptions inapplicable here). *See, e.g.*, *Core Wireless*, *supra*. Moreover, it doesn't accept the conclusion that naturally follows—*viz.*, that the '911 claims are patent-eligible. *See* Op. at 20.

Accordingly, given the onerous standard applicable to defenses for which Neapco bears the burden—by clear-and-convincing evidence—the record bars summary judgment. On that basis alone, the court should vacate this decision.

### B. The '911 Claims Recite a *Multi*-Part, *Multi*-Step Process for Manufacturing Auto-Parts—and are *Not* Directed to Ineligible Matter.

***Second***, the '911 claims are ***not*** "directed to" ineligible matter (Hooke's law), and for three overlapping reasons—any one of which could establish this same patent-eligible conclusion.

#### 1. Under *Bilski*, the '911 Claims Recite a Process "Grounded" in *Multiple Physical* Parts, Showing the Claims are *Not* Directed to Ineligible Matter.

For starters, the '911 claims recite multiple physical components and steps in a "method for manufacturing" another physical product ("driveshaft" auto-parts). The claims recite, for example, a "driveline system" with "driveline component[s]," a "shaft assembly," "a hollow shaft member," and having "at least one liner" "tun[ed]" and "positioned" within the "shaft member." Such physical "machine-or-transformation" qualities provide (a) "useful and important clue" regarding the patent-eligibility of a "process," like the '911 method claims here; and (b) it may entirely suffice to establish the §101-eligibility for process claims ***"grounded in physical or other tangible form."*** *In re Bilski*, 130 S.Ct. 3218, 3226-27 (2010).

### 2. The '911 Claims Also Recite a Multi-Step Manufacturing Process—i.e., "*Industrial*" Matter the Court has "*Historically*" Deemed §101-Eligible.

Even more, the '911 claims recite these physical components as part of a multi-step method for manufacturing auto-parts—i.e., an ***"industrial"*** process that the Supreme Court has "historically" deemed patent-eligible. Until now, mechanical and industrially-based claims such as these were effectively (if not automatically) safe from the *Mayo/Alice* test.

That is not nostalgia, but the counsel of case law. Beyond *Bilski,* for example, the Supreme Court in *Diehr* reversed the U.S. Patent and Trademark Office's ineligibility decision for claims directed to a "physical and chemical process for molding" and curing rubber products. 450 U.S. at 180, 184. The PTO found that various steps in this claimed "curing" process were "conventional." *Id.* The Court didn't disturb those findings, but still held the claims eligible. *Id.* As it reasoned, *Diehr*'s claimed rubber-molding process related to "***[i]ndustrial processes*** … which have ***historically been eligible to receive the protection of our patent laws***." *Id.* Thus, as the '911 patent's claimed manufacturing method for auto-parts is also an "industrial process," it too concerns "historically"-eligible matter. *See id.*

More broadly, this court has instructed that the *Mayo/Alice* ineligibility test shouldn't apply to a "substantial class of claims." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2015). And it has thusly focused that test on the two above-mentioned categories (well-known business methods/abstract ideas

implemented by computer technology; and diagnostic tests)—both of which differ entirely from the '911 patent's claimed matter. *Contra Athena, supra*, n.6. Yet the majority appears to consciously break new §101 ground in applying *Mayo/Alice* not only to an ***"industrial process,"*** *contra Diehr, supra*; but to a process "grounded in" ***physical/mechanical*** parts, *contra Bilski, supra. See* Op. at 9. In so doing, the majority deviates from *Diehr's* actual analysis; breaks from this court's established corpus of §101 cases; and threatens what the Supreme Court has warned against—using "too broad" an ineligibility test such that it could "eviscerate patent law."[7] That is, if "industrial-process," physically-based patents like these are ineligible under *Mayo/Alice*, then seemingly every patent is in ineligibility jeopardy. And the test will eviscerate not just patent law, but also the incentives to innovate that patent laws promote.[8]

### 3. As in *Diehr*, the '911 Claims Recite *One* Step with "Tuning At Least One Liner"—*in Conjunction with Several Other Steps and Components.*

The '911 claims are "directed to" eligible matter for still a third reason: Even under Neapco's reading, the claims recite but one allegedly ineligible step ("tuning at least one liner") ***"in conjunction with" several other steps and physical***

---

[7] *Mayo Collaborative Servs v. Prometheus Labs, Inc.*, 132 S.Ct. 1289, 1293 (2012).
[8] *See, e.g.,* U.S. Const., Art. I, § 8, cl. 8.

***components***. Contrary to the majority's decision (Op. at 19), then, this case materially mirrors *Diehr*.

In addition to "conventional" steps, 450 U.S. at 180-81, the *Diehr* claims comprised multiple steps requiring a computer and mathematical equations, including the "Arrhenius equation." *Id.* at 177-78. But the combination of those claimed steps were enough to make them patent-eligible. As the Supreme Court explained, "Congress intended statutory subject matter [that is patent-eligible under §101] to ***'include anything under the sun that is made by man.'***" *Id.* at 182. Given that wide patent-eligibility berth, the Court recognized that a "claim drawn to subject matter otherwise" eligible does ***not*** become ineligible "simply because it uses a mathematical formula, computer program, or digital computer." *Id.* at 187.[9] The Court thus rejected the notion that, in *Diehr*, having "***several [claimed] steps***" that included ineligible equations and a computer meant that such claims sought to "patent a mathematical formula":

> Their [claimed] process admittedly employs a well-known mathematical equation, but they do not seek to pre-empt the use of that equation. Rather, they seek only to foreclose from others the use of that equation ***in conjunction with all of the other steps in their claimed process***. These include installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the appropriate cure time through the use of the formula and a digital computer, and automatically opening the press .... *Id.*

[9] *Accord Mayo*, 132 S.Ct. at 1293 (quoting *Diehr* and this principle).

As *Diehr* and other precedents teach, a claim is thus "directed to" ineligible matter—such as mathematical equations or natural law—if the claim text is ***directed essentially*** to just that matter.[10] But since *Diehr*'s claims required these abstract steps "in conjunction with all of the other steps in the claimed process," those claims still were ***not*** drawn (or directed essentially) to such matter. *See id.* at 180-81.

This case parallels *Diehr*. As explained above, *Diehr* and this case both have claims reciting patent-eligible industrial-manufacturing processes. And here, as there, the claims recite a single step that purportedly implicates ineligible matter (Hooke's law)—but does so ***"in conjunction with all of the other steps*** ... in the claimed process" for making automobile "driveshafts." *Id.* at 180. For this reason as well, the '911 claims are ***not*** "directed to" ineligible matter.

**C. The '911 Claims do *Not* Preempt Hooke's Law, Confirming They are Patent-Eligible.**

The Supreme Court has recognized that, without limits on §101-eligibility, parties could seek patents that broadly claim natural laws, abstract ideas, or natural phenomena—the principle building blocks of invention—thus preempting innovation by others. *Diehr*, 450 U.S. at 185-87. But as in *Diehr*, the '911 claims do

[10] *Contrast Parker v. Flook*, 437 U.S. 584, 586 (1978) (claim held ineligible when "[a]ll" it provided for was ***formula*** for computing an updated alarm limit"); *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972) (claims ineligible when directed to ***algorithm*** "for converting binary-coded" numbers, "not limited to any particular art or technology, to any apparatus or machinery, or to any particular end use").

***not*** broadly preempt use of Hooke's law; at worst, "[t]hey seek only to foreclose … [Hooke's law] in conjunction with all of the other steps in their claimed process." *Id.* Thus, if *Diehr*'s claims were patent-eligible, so too are the '911 claims.

In distinguishing *Diehr*, the majority overlooks the qualifiers about when a "particular technological environment cannot save" a claim reciting ineligible matter. Op. at 19. As *Diehr* clarified, this rule doesn't apply to multi-step method claims that, "considered as a whole," do not attempt to patent ineligible matter:

> [W]hen a claim containing a mathematical formula [or natural law] ***implements or applies that formula in a structure or process*** which, ***when considered as a whole***, is performing a function which the patent laws were designed to protect … then the claim satisfies the [eligibility] requirements …. Because we do not view [*Diehr*'s] claims as an attempt to patent a mathematical formula, but rather to be ***drawn to an industrial process for the molding of rubber products***, we [uphold the claims' eligibility]. 450 U.S. at 192-93.

Accordingly, the '911 claims remain eligible. After all, the purported natural law here is but one part of a ***"whole"*** series of steps and physical components—for a claim "drawn to an ***industrial process*** for" making auto-parts. *Id.*

### D. The Majority's §101 Rulings Warrant En-Banc Treatment.

This court will consider an en-banc hearing if (1) "necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). Here, the majority:

(1) failed to apply the correct summary-judgment requirements, *see Core Wireless*; precedents in notes 2-4, *supra*;

(2) failed to consider that a "process" may qualify as §101-eligible when, as here, those method claims involve "machine-or-transformation" or are "grounded in physical or other tangible form," *see Bilski, supra*;

(3) failed to properly consider the §101-eligiblity of claims reciting an "industrial" process for manufacturing autoparts—matter deemed "historically-eligible" by the Supreme Court's *Diehr* decision.

Each of these errors highlights the majority's deviations from precedent on key summary-judgment and §101 issues, and each presents questions of "exceptional importance."

## CONCLUSION

For the foregoing reasons, and in the briefs filed by Petitioner and amici, Amicus Curiae, retired Circuit Judge Michel, requests that this court grant rehearing en banc and properly resolve these critical ineligibility issues.

Respectfully submitted,

/s/ John T. Battaglia
JOHN T. BATTAGLIA
4608 Brookside Drive
Alexandria, Virginia 22312
Tel. # 703-658-2101
JT6Battaglia@Hotmail.com
*Counsel for Amicus Curiae*

December 12, 2019

**CERTIFICATE OF COMPLIANCE**

I hereby certify that, using the Word program's word-count feature, the above Amicus Brief contains 2596 words, in compliance with Federal Rule of Appellate Procedure 27(d)(2).

__/s/ John T. Battaglia__

**ALL EMPHASIS ADDED UNLESS OTHERWISE NOTED**

Unless otherwise noted, all emphases has been added in the foregoing Amicus Brief.

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 12, 2019, an electronic copy of the foregoing document was filed with the Clerk of Court for the U.S. Court of Appeals for the Federal Circuit, using the CM/ECF system, which thereby served a copy upon all counsel of record.

December 12, 2019

/s/ John T. Battaglia

JOHN T. BATTAGLIA
4608 Brookside Drive
Alexandria, Virginia 22312
Tel. # 703-658-2101
JT6Battaglia@Hotmail.com
*Counsel for Amicus Curiae*