# United States Court of Appeals for the Federal Circuit

---

**AMERICAN AXLE & MANUFACTURING, INC.,**
*Plaintiff-Appellant*

**v.**

**NEAPCO HOLDINGS LLC, NEAPCO DRIVELINES LLC,**
*Defendants-Appellees*

---

2018-1763

---

Appeal from the United States District Court for the District of Delaware in No. 1:15-cv-01168-LPS, Chief Judge Leonard P. Stark.

---

**ON MOTION**

---

JAMES RICHARD NUTTALL, Steptoe & Johnson LLP, Chicago, IL, for plaintiff-appellant. Also represented by JOHN LLOYD ABRAMIC, KATHERINE H. JOHNSON, ROBERT KAPPERS; CHRISTOPHER ALAN SUAREZ, Washington, DC.

J. MICHAEL HUGET, Honigman LLP, Ann Arbor, MI, for defendants-appellees. Also represented by SARAH E. WAIDELICH; DENNIS J. ABDELNOUR, Chicago, IL.

---

Before DYK, MOORE, and TARANTO, *Circuit Judges*.

Order for the court filed by *Circuit Judge* DYK.

Concurring opinion filed by *Circuit Judge* MOORE.

DYK, *Circuit Judge*.

**O R D E R**

Plaintiff-appellant American Axle & Manufacturing, Inc. ("AAM") filed a motion to stay issuance of the mandate pending the filing of a petition for writ of certiorari in the Supreme Court. Defendants-appellees opposed the motion.

I

Federal Rule of Appellate Procedure 41 provides that a motion for stay of the mandate "must show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). The Advisory Committee Notes state that "[t]he Supreme Court has established conditions that must be met before it will stay a mandate." Fed. R. App. P. 41, advisory committee's note to 1994 amendment (citing Robert L. Stern et al., *Supreme Court Practice* § 17.19 (6th ed. 1986)). In this respect, the Advisory Committee Notes refer to the standard established by the in-chambers opinions of the individual justices. *See* Stern et al., *supra*, § 17.19. The Supreme Court itself has approved this standard in *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

This standard requires that the applicant show "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay. In close cases the Circuit Justice or the Court will balance the equities and weigh the relative harms to the applicant and to the respondent." *Id.*

Chief Justice Roberts, acting as the Circuit Justice for this court, specifically applied that standard in a patent

case, denying a stay solely for lack of irreparable injury. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 572 U.S. 1301, 1301–02 (2014) (Roberts, C.J., in chambers). After we held certain of Teva's patent claims invalid, Teva sought a stay in order to prevent market entry by the generic pharmaceutical company respondents. The Chief Justice noted that the first two requirements for a stay were met, because the Supreme Court had already granted certiorari and Teva had "shown a fair prospect of success on the merits." *Id.* at 1301. But he denied a stay because a likelihood of irreparable injury was not shown, explaining that "[r]espondents acknowledge[d] that, should Teva prevail . . . and its patent be held valid, Teva [would] be able to recover damages from respondents for past patent infringement" and therefore "the extraordinary relief that Teva [sought was] unwarranted." *Id.* at 1301–02.

As a matter of Federal Circuit law, we interpret the Rule as requiring application of the standard articulated by the Supreme Court in *Hollingsworth* and the Justices' in-chambers opinions. *See Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858 (Fed. Cir. 1991) (Federal Circuit law, not regional circuit law, governs such matters).

## II

In this case, AAM has not made the required showing of a likelihood of irreparable injury absent a stay. With respect to claim 22 and related claims, the decision of this court requires no further action by the district court since the claims have been held to be unpatentable. AAM argues that "[i]f the Supreme Court grants review and decides that the asserted claims of [AAM's patent] are patent eligible under § 101, this Court will have to recall its mandate to conform its disposition with such a decision." Mot. 14, ECF No. 136. This action, common to every case in which the Supreme Court does not affirm, is not irreparable harm.

With respect to claim 1 and related claims, the decision of this court remands to the district court for further

proceedings. AAM argues that there is "good cause for a stay" because it "intends to petition for certiorari with regard to the entirety" of our judgment and argues that "[s]ignificant burdens and expenses would accrue" should the mandate issue because "the parties and district court would continue to litigate issues related to claim 1." *Id.* at 12–13. Continued litigation with respect to claim 1 cannot be irreparable injury. "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see also Commonwealth Oil Refin. Co. v. Lummus Co.*, 82 S. Ct. 348, 349 (1961) (Harlan, J., in chambers) (denying motion for stay of the mandate where the only possible harm from denial of the stay was that it could "set in motion the machinery for arbitration and . . . other matters affecting the possible future conduct of the arbitration"); *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) (need to "prepar[e] to commence trial within 120 days while simultaneously filing a petition for certiorari" was not irreparable injury under Rule 41); *United States v. Microsoft Corp.*, No. 00-5212, 2001 WL 931170, at *1 (D.C. Cir. Aug. 17, 2001) (denying motion to stay mandate under Rule 41 because movant "failed to demonstrate any substantial harm that would result from the reactivation of proceedings in the district court during the limited pendency of the certiorari petition.").

AAM has cited no authority suggesting that the prospect of further district court proceedings while the case is on review could constitute irreparable injury. AAM points to the Practice Note to this court's Rule 41, which reminds litigants that their right to seek certiorari is unaffected by the issuance of the mandate and, "[c]onsequently, a motion to stay the mandate should advance reasons for the stay beyond the mere intention to apply for certiorari, e.g., to forestall action in the trial court or agency that would necessitate a remedial order of the Supreme Court if the writ of certiorari were granted." Fed. Cir. R. 41 practice note.

But that Practice Note would not displace the governing stay standard if they conflicted. Even by its own terms, moreover, the Practice Note's language does not support a conclusion that the trial court proceedings that might occur regarding claim 1 and related claims would support a stay. Under the standard applied by the Supreme Court, this is not a situation in which the Court would issue a "remedial order" staying our mandate if certiorari were granted since the only claimed irreparable injury is litigation cost.

We conclude that the irreparable injury requirement is not satisfied here. On this ground alone a stay is not warranted, quite apart from the merit or lack of merit of the petition for certiorari.

Accordingly,

IT IS ORDERED THAT:

The motion to stay the mandate pending the filing of a petition for writ of certiorari in the Supreme Court is denied.

FOR THE COURT

October 23, 2020 /s/ Peter R. Marksteiner
Date Peter R. Marksteiner
Clerk of Court

# United States Court of Appeals for the Federal Circuit

---

**AMERICAN AXLE & MANUFACTURING, INC.,**
*Plaintiff-Appellant*

**v.**

**NEAPCO HOLDINGS LLC, NEAPCO DRIVELINES LLC,**
*Defendants-Appellees*

---

2018-1763

---

Appeal from the United States District Court for the District of Delaware in No. 1:15-cv-01168-LPS, Chief Judge Leonard P. Stark.

---

MOORE, *Circuit Judge,* concurring.

Today, we adopt the three-prong test for staying a mandate adopted by our sister circuits and several individual Justices. I write separately to elaborate on how those prongs apply here. While American Axle has established a reasonable probability that certiorari will be granted and a fair prospect that the majority of the Court will reverse, it fails to establish irreparable harm and thus a stay is not warranted.

I

The Supreme Court often grants certiorari to resolve circuit splits that render the state of the law inconsistent

and chaotic. *See, e.g.*, *Braxton v. United States*, 500 U.S. 344, 347 (1991) ("A principal purpose for which we use our certiorari jurisdiction . . . is to resolve conflicts among the United States courts of appeals and state courts concerning the meaning of provisions of federal law."); *see also Rogers v. Grewal*, 140 S. Ct. 1865, 1875 (2020) (Thomas, J., dissenting from the denial of certiorari) ("This case gives us an opportunity to provide lower courts with much-needed guidance, ensure adherence to our precedents, and resolve a Circuit split. Each of these reasons is independently sufficient to grant certiorari."). What we have here is worse than a circuit split—it is a court bitterly divided.

As the nation's lone patent court, we are at a loss as to how to uniformly apply § 101. All twelve active judges of this court urged the Supreme Court to grant certiorari in *Athena* to provide us with guidance regarding whether diagnostic claims are eligible for patent protection. There is very little about which all twelve of us are unanimous, especially when it comes to § 101. We were unanimous in our unprecedented plea for guidance. But, as we acknowledged in our decisions in *Athena,* that holding was at heart a reticent application of *Mayo* to similar claims.

The current case is the progeny of neither *Alice* nor *Mayo*. It is our own dramatic expansion of a judicial exception to § 101. Section 101 is clear: "[w]hoever invents or discovers any new and useful process," like the claims here, "may obtain a patent." Yet, we have struggled to consistently apply the judicially created exceptions to this broad statutory grant of eligibility, slowly creating a panel-dependent body of law and destroying the ability of American businesses to invest with predictability. *See Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part) (characterizing § 101 doctrine as "indeterminate and often lead[ing] to arbitrary results"). Our confusion has driven commentators, amici, and every

judge on this court to request Supreme Court clarification. *See Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*, LLC, 927 F.3d 1333 (Fed. Cir. 2019). If a circuit split warrants certiorari, such an irreconcilable split in the nation's only patent court does likewise.

This case is a model of our divide. To be sure, natural laws are "basic tools of scientific and technological work," "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–71 (2012). Before this case, we applied this exception narrowly, because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," so "too broad an interpretation of this exclusionary principle could eviscerate patent law." *Id.* at 71. In a divided panel here, we struggled to marry these concepts into an administrable distinction between eligible and ineligible claims. The majority concluded *as a matter of law* that claims to a manufacturing process are not eligible for patent protection because they are directed to a law of nature even though no law of nature appears in the claims, the patent, or the prosecution history. Under the majority's new "Nothing More" test, claims are ineligible when they merely make use of a natural law. We have strayed too far from the text of the statute. I dissented, proposing that we follow the narrow test announced in *Alice* and that we refrain from usurping the district court's factfinding role. Equally divided in a 6-6 vote, the full court denied rehearing en banc and, in doing so, detailed its further divided views. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F.3d 1347, 1348 (Fed. Cir. 2020) (prompting two opinions concurring in the denial and three opinions dissenting from the denial). I believe American Axle has established that there is a reasonable probability certiorari will be granted.

II

The claims here are not directed to a business method, internet or financial method, the likes of which the Court dealt with in *Alice* or *Bilski*. Nor does this case map onto the Court's holding in *Mayo* regarding the patent eligibility of diagnostic inventions, as did our decisions in *Ariosa* and *Athena*. Instead, our decision in *American Axle* is a patent killing judicial exception of our own creation. The claims here are directed to a process for manufacturing car parts—the type of process which has been eligible since the invention of the car itself. They do not preempt the use of a natural law, a building block of science, which should be freely available to all. To nonetheless hold these claims ineligible, the majority broadens the judicial exceptions in a way that threatens to swallow the whole of the statute. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285 (Fed. Cir. 2020), *reh'g denied*, 966 F.3d 1347, 1365 (Stoll, J., dissenting) ("I grow more concerned with each passing decision that we are, piece by piece, allowing the judicial exception to patent eligibility to 'swallow all of patent law.'") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) and citing *Mayo*, 566 U.S. at 70–73). Such a rejection of the plain language of the patent statute in favor of a vast and amorphous judicial exception in which we Federal Circuit judges get to decide *de novo* not just the legal principles, but the application of the science itself, cannot stand. American Axle has established a fair probability that the Supreme Court will reverse.

The Supreme Court has often corrected this court when we have defied precedent or strayed from our mandate by claiming *de novo* dominion over factual issues. *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931–34 (2016); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324–27 (2015); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007). We repeat this mistake again. We hold *as a matter of law* that the claimed result (a reduction in two types of vibration in a drive shaft) was achieved by nothing

more than a natural law that appeared nowhere in the claims, patent or prosecution history. We approach as a question of law whether the vibrations in the drive shaft were reduced by application of Hooke's Law and nothing more. And in doing so, we reject the undisputed testimony of both experts. This is simply not our role as appellate judges. American Axle has established a fair prospect that the Supreme Court will reverse our usurpation of the district court's fact-finding role and our decision to expand the natural law exception to cover an automotive manufacturing process in direct contravention of the plain statutory language.

III

Our remand to the district court of claim 1 and its dependent claims will surely cause redundant, expensive process. We unanimously held that claim 1 and its dependent claims are not directed to a natural law. But as the majority explained: "On appeal, Neapco relied on both the natural law and abstract idea categories of ineligibility in defending the district court's decision. But the abstract idea basis was not adequately presented and litigated in the district court." *Am. Axle*, 967 F.3d at 1300–01. Still, the majority ordered the district court to consider the abstract idea arguments on remand. Whether a claim is directed to Hooke's Law is a different question than whether a claim is directed to an abstract idea. I dissented from our remand which requires the district court to consider a defense which we concluded was not adequately presented and litigated. Whether to allow such a new defense ought to be within the sound discretion of the district court, but the majority's remand dictates otherwise. The court and parties will now be forced to undertake significant, expensive and burdensome process addressing this new defense.

Due process demands that American Axle be given the "opportunity to be heard at a meaningful time and in a

meaningful manner" regarding Neapco's new arguments. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Therefore, discovery must be reopened, new expert reports permitted, and new summary judgment briefing allowed. And since the defendant gets to challenge these patent claims on an entirely different ground (abstract idea versus natural law), American Axle as the patentee is free to make whatever arguments it chooses in defense—such as arguments regarding the factual underpinnings of the second part of the *Alice-Mayo* test and the level of detailed structure present in the dependent claims. The majority's forced do-over works both ways. And depending on the actions of the Supreme Court, there could be significant wasteful, duplicative or parallel process, including on American Axle's dependent claims, which we refused to separately address. Or American Axle may choose to seek certiorari on the propriety of our remand as to claim 1, and the Supreme Court may determine that our remand instructions were improper.

Although American Axle faces significant expense and potentially duplicative process, this is not irreparable harm. Thus, I join the majority's adoption of the three-prong test and its decision that we cannot stay the mandate in this case under these circumstances. It bears noting, however, that although we have not stayed our mandate, the district court retains "the power to stay proceedings" as to claim 1 and the dependent claims, which "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (reviewing decision to stay for an abuse of discretion).